UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Rachel M. Tye,

    Plaintiff,

v.

LJ Ross Associates,

    Defendant.
_____/

Case No. 11-15195

Honorable Nancy G. Edmunds

### ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]

Before the Court is LJ Ross Associates's motion for summary judgment on Plaintiff Rachel M. Tye's Federal Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., claims. (Dkt. 15.)

Plaintiff alleges that Defendant violated § 1692d by harassing her in connection with the collection of an alleged debt; § 1692d(5) by causing Plaintiff's telephone to ring repeatedly or continuously in pursuit of that debt; § 1692f by using unfair and unconscionable means against Plaintiff to collect or attempt to collect on that debt; and § 1692g when it failed to notify Plaintiff that she had thirty days to dispute the alleged debt or to demand verification thereof. (Dkt. 1, Compl. at 3-4.)

Plaintiff seeks actual compensatory damages pursuant to § 1692k(a)(1), statutory damages of $1,000.00 pursuant to § 1692k(a)(2)(A), fees, costs, and any other relief that the Court finds appropriate. (Compl. at 4.)

The Court held a hearing on January 30, 2013. Because Plaintiff has not met her burden in bringing forth evidence that creates an issue of fact on her claims, the Court grants Defendant's motion for summary judgment.

## I. Factual assertions

In support of its motion, Defendant has attached the affidavit of Rebecca Roberts. (Dkt. 15, Def.'s Mot. for Summ. J., Ex. A, Roberts Aff.) Roberts states that she is the Operation Manager at LJ Ross Associates and that her duties included overseeing Defendant's day-to-day collection activities to assure that LJ Ross Associates's employees complied with company policies and procedures, client requirements, and collection laws including the FDCPA. (Roberts Aff. ¶ 2.) She adds that she is personally familiar with Defendant's collection practices and procedures, including Defendant's system for maintaining account records. (*Id.* ¶ 3.) She states that this system maintains all of Defendant's account records, including records of any incoming and outgoing calls. (*Id.*)

Roberts explains that she has personally reviewed Defendant's records relating to Plaintiff. (Roberts Aff. ¶ 4.) She states that, on August 6, 2010, Allegiance Health referred an unpaid medical account for collection for services rendered to Plaintiff on December 26, 2009 ("Account #1."). (*Id.* ¶ 6.) Roberts states that, on August 6, 2010, Defendant mailed its initial collection notice for Account #1 to Plaintiff's home address. (*Id.* ¶ 7.) Roberts states that she has attached a true and accurate "exemplar" of the initial notice sent to Plaintiff. (*Id.*) Roberts adds that the first letter was not returned to Defendant. (*Id.* ¶ 8.)

Roberts states that Allegiance Health referred three other accounts for collection of services rendered to Plaintiff to Defendant. (Roberts Aff. ¶¶ 9, 12, 15.) Roberts adds that

similar letters followed these referrals. (*Id.* ¶¶ 10, 13, 16.) Roberts further adds that none of these letters were returned. (*Id.* at 11, 14, 17.)

Roberts states that Defendant made no phone calls to Plaintiff regarding Account #1 or Account #2 between August 1, 2011 and October 31, 2011. (Roberts Aff. ¶¶ 18, 19.) Roberts states that, for Account #3, Defendant made 19 calls to Plaintiff between August 1, 2011 and October 31, 2011. (*Id.* ¶ 20.) Roberts adds that Defendant did not call Plaintiff more than two times per day. (*Id.*) For Account #3, Roberts informs that Defendant "actually spoke" with Plaintiff one time, on September 2, 2011. (*Id.*) During this conversation, Roberts explains, Plaintiff informed Defendant that she did not have funds to pay the debt. (*Id.*) For Account #4, Roberts informs that Defendant made a total of 18 calls to Plaintiff between August 1, 2011 and October 31, 2011 and also never called Plaintiff more than twice a day. (*Id.* ¶ 21.) Roberts adds that Defendant never spoke with Plaintiff on any of these occasions. (*Id.*)

Roberts concludes that Defendant "has never received anything in writing from Plaintiff regarding [the] accounts." (Roberts Aff. ¶ 22.)

Plaintiff has submitted her own affidavit. (Pl.'s Resp., Ex. B, Pl.'s Aff.) Her affidavit consists of seven paragraphs:

1. Between August 2011 and October 2011, Defendant's representatives engaged in debt collection activities seeking payment from me for alleged medical debt.
2. During this time, Defendant placed calls to me on my home telephone on near daily basis.
3. Defendant has placed multiple harassing calls to me in a single day, sometimes as often as four times in a single day.

3

4. Because I am disabled I found Defendant's repeated calls to be harassing and disruptive to my day, causing me anxiety.

5. I requested Defendant stop calling me, yet Defendant continued to call me.

6. I never received anything in writing from the Defendant setting forth my rights pursuant to the FDCPA to dispute the alleged debts Defendant was seeking to collect from me or providing me with my rights to seek verification of these debts.

7. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

4

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### III. Analysis

Plaintiff has alleged three causes of action under the FDCPA.  Plaintiff first alleges that Defendant violated § 1692d by calling her repeatedly and harassing her.  Plaintiff then alleges that Defendant § 1692f because it  used unfair or unconscionable means to collect

or attempt to collect Plaintiff's debt. And Plaintiff finally alleges that Defendant violated § 1692g because Plaintiff did not receive the statutorily required notice.

The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The FDCPA broadly prohibits debt collectors from engaging in harassing, oppressive, or abuse conduct, from using false, deceptive, and misleading representations, and from collecting debts through unfair or unconscionable means." *Saltzman v. I.C.System, Inc.*, 09-10096, 2009 WL 3190359, at *3 (E.D.Mich. Sept. 30, 2009) (Edmunds, J.) (citing 15 U.S.C. §§ 1692d, 1692e, 1692f.). "Courts use the 'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA." *Webb v. Asset Acceptance, LLC*, 11-4163, 2012 WL 4799610, at *1 (6th Cir. Oct. 10, 2012) (citation omitted).

Plaintiff first alleges that Defendant violated § 1692d. That section provides,

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

"The determination of whether a debt collection agency's telephone calls amount to 'actionable harassment or annoyance turns not only on the volume of calls made, but also

on the pattern of calls." *Saltzman v. I.C.System, Inc.*, 09-10096, 2009 WL 3190359, at *7 (E.D.Mich. Sept. 30, 2009) (Edmunds, J.) (citation omitted). A plaintiff carries the burden of establishing that a defendant's calls violated § 1692d(5). *Id.*

Plaintiff argues that Defendant contacted multiple times between August and October 2011, including multiple times per day, up to four times per day. (Pl.'s Resp. at 7.) Plaintiff also states that there is "a dispute as to the intent in placing these calls to Plaintiff." (*Id.*) Plaintiff explains that "[i]t is clear based on Defendant's frequent communications with Plaintiff that it intended to harass her." (*Id.*) Plaintiff then explains that she asked Defendant not to contact her, but that it continued to contact her. (*Id.*) Plaintiff adds that, given that Defendant was on notice that its calls were unwanted, and that the record contains "conflicting information as to the frequency, pattern, and intent of calls made, a genuine issue of material fact exists as to whether Defendant violated § 1692d and d(5)[.]" (*Id.*)

Here, the Court does not find that Plaintiff's assertions amount to a violation of the FDCPA. Plaintiff has not stated or explained *how* the calls were harassing, oppressive, or abusive. Plaintiff argues that the amount of calls, alone, satisfies the statute's prohibition against harassment, oppression, and abuse. But the amount of calls, in and of themselves, is not a per se violation of the statute. While the pattern and frequency of calls may violate the statute, the pattern and frequency does not necessarily constitute a violation.

> Thus, the courts have found, for example, that an immediate callback after the debtor has hung up or has indicated his or her unwillingness to speak to the debt collection agency may constitute improper harassment. In contrast, a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor,

7

>if this effort is unaccompanied by any oppressive conduct such as threatening messages.

*Saltzman*, 2009 WL 3190359, at *7 (all citations omitted).

Here, the record does not show that Defendant harassed, oppressed, or abused Plaintiff in placing the calls. Defendant admits calling Plaintiff 37 times between August 1, 2011 and October 31, 2011. Defendant states that it never contacted Plaintiff more than twice per day and that it only spoke with Plaintiff once. Plaintiff states that she received up to four calls per day from Defendant.

In *Saltzman*, the Court noted that there was a disparity between the number of calls the collection agency placed and the number of actual successful conversations. 2009 WL 3190359, at *7. The Court found that the low ratio suggested a "difficulty" reaching Plaintiff "rather than an intent to harass." *Id.* (citation omitted). The Court further held that "[b]eyond the broad allegations contained in [plaintiff's complaint, [she] has failed to point to any specific circumstances surrounding these telephone calls that would show any intent . . . to harass, annoy or abuse." (*Id.*)

The situation in *Saltzman* is analogous to Plaintiff's situation. She has alleged that Defendant called her repeatedly and alleged that Defendant harassed her, but save for that conclusory allegation of harassment, she has not explained how Defendant harassed her or brought forth any evidence of harassment or intent to harass.

The Court has reviewed the records that Plaintiff has attached to her response–the Court has not found the instance in which Plaintiff alleges that Defendant contacted her four

times in one day. And Plaintiff has failed to show the Court where that contact occurred.

Plaintiff also alleges that Defendant continued to call her, despite her request that it no longer contact her. The Court finds that this allegation is insufficient to create an issue of fact as to a violation of the FDCPA. In *Saltzman*, this Court found that, although the plaintiff alleged that she requested that the defendant stop calling her, the plaintiff did not send a "cease and desist letter, dispute the amount owed, or provide evidence that [the defendant] ha[d] acted in a manner that would be actionable as harassment, oppression or abuse." *Id.* Here, Plaintiff has also failed to provide evidence that Defendant acted in any way that would constitute harassment, oppression, or abuse under the FDCPA.

Given Plaintiff's failure to bring forth any credible evidence that Defendant called her four times in one day or that any of the calls were with the intent to harass, the Court finds that summary judgment is appropriate on this claim.

Plaintiff has also alleged that Defendant violated § 1692f. This section provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The section then lists several possible means of violating the section. This section prohibits collecting a debt unless it was expressly authority by an agreement creating the debt or permitted by law and other specific means of collecting debts.

Plaintiff alleges that the purpose of this section is to prohibit collectors from using various unfair or unconscionable means to attempt to collect a debt from a consumer. (Pl.'s Rep. at 7.) Plaintiff maintains that an issue of fact exists whether Defendant's "efforts to collect this alleged debt . . . constitute unfair and/or unconscionable means." (*Id.* at 8.)

9

Plaintiff narrows the issue as to what Defendant's intent was in contacting Plaintiff after she requested that Defendant no longer contact her. (*Id.*) Plaintiff also argues that there are issues of fact whether Defendant sent Plaintiff the required written notice, as discussed below.

The Court finds that Plaintiff has not offered any evidence in support of a violation of this section. Defendant is therefore entitled to summary judgment on this claim.

Plaintiff lastly alleges that Defendant violation § 1692g. That section requires a debt collector to send a written notice containing statutorily required information, like the amount of date and to whom the debt is owed. The debt collector must send this notice out within five days of its first communication with the person allegedly owing the debt. 15 U.S.C. § 1692g.

Plaintiff argues that Roberts's statement that Defendant sent the required notice each time Defendant acquired a new account for Plaintiff is insufficient. (Def.'s Mot. at 8.) Plaintiff maintains that a sample letter, as the one Defendant attached, and not the actual letter, is not sufficient to find that Defendant complied with § 1692g. (*Id.*) Plaintiff further argues that nowhere in Roberts's affidavit does she "aver that she had personal knowledge that Defendant sent Plaintiff this letter, nor does she aver to have sent the letter herself." (*Id.*)

In support of this position, Plaintiff has attached a one-paged order from a district court in Delaware that shows that a judge there found a material issue of fact because the plaintiff had alleged that he did not receive the FDCPA required notice when the defendant stated that its records showed that the letter had been sent. (Pl.'s Resp., Ex. 3.) The

Court is not persuaded by Plaintiff's case.  The case shows no facts and, as the Court explains below, case precedent in this district shows that the FDCPA only requires that a debt collector send the notice, not that the plaintiff receive the notice.

The Court is satisfied with Roberts's affidavit.  In it, she states that she is personally familiar with Defendant's day-to-day collection activities, personally familiar with Defendant's system for maintaining account records, and that she personally reviewed Plaintiff's records.  (Roberts Aff.)

Plaintiff also objects to the letter that Defendant has attached to its motion.  Defendant has attached an example of the type of letter Roberts states Defendant sent to Plaintiff, but not copies of the exact letters sent to Plaintiff.

The Court has reviewed Roberts's affidavits and the records that Plaintiff has attached to her response.  The records that Plaintiff attached align with Roberts's statement: each day Roberts states that a letter was sent, the records indicate that a letter was sent.  Given Plaintiff's records and Defendant's affidavit, and the fact that Defendant only has to send the notice, Plaintiff does not have to receive it, the Court finds summary judgment appropriate on this claim.  *See Raab v. Nationwide Collection Agencies, Inc.*, 12-64, 2013 WL 53760 (W.D.Mich. Jan. 3, 2013) (Bell, J.) (holding that the plaintiff's mere allegation that the defendant failed to send notice in violation of § 1692f was insufficient when the plaintiff merely made threadbare recitals of the statutory violations of § 1692.) (and stating that the plaintiff's "allegations . . . merely "parrot the statutory language," and holding that "[t]he formulaic recitation of the statutory language is not sufficient to meet [even the motion to dismiss] pleading standard.").  *See also Duby v. Shermeta, Adams & Von Allmen, P.C.*,

12-12775, 2012 WL 6705413, at *7 (E.D.Mich. Dec. 26, 2012) (Borman, J.) (surveying and quoting case law for the proposition that § 1692g does not require a debt collector to prove that a plaintiff actually received the notice, § 1692g only requires that a debt collector send the notice.).  Summary judgment is also appropriate on this claim.

## IV.   Conclusion

For the above-stated reasons, the Court GRANTS Defendant's motion for summary judgment and dismisses this case.

                                    s/Nancy G. Edmunds
                                    Nancy G. Edmunds
                                    United States District Judge

Dated:  February 4, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 4, 2013, by electronic and/or ordinary mail.

                                    s/Carol A. Hemeyer
                                    Case Manager